1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                          EASTERN DIVISION

3    UNITED STATES OF AMERICA,        Case No. 5:18cr406
                                      Akron, Ohio
4              Plaintiff,             September 19, 2018

5         vs.

6    WILLIE BENTON, JR.,

7              Defendant.

8
                      TRANSCRIPT OF PROCEEDINGS
9            BEFORE THE HONORABLE JOHN R. ADAMS
                  UNITED STATES DISTRICT JUDGE
10

11                    PRETRIAL CONFERENCE

12

     APPEARANCES:
13

     For the Government:        Aaron P. Howell
14                              Office of the U.S. Attorney
                                208 Federal Buidling
15                              2 South Main Street
                                Akroon, Ohio  44308
16                              330-352-0993

17

     For the Defendant:        Lawrence J. Whitney, Esq.
18                             Burdon & Merlitti
                               Suite 201
19                             137 South Main Street
                               Akron, Ohio  44308
20                             (330) 253-7171

21

22

23

24

25

```
 1

 2

 3    Court Reporter:              Lori Ann Callahan, RMR-CRR
                                   United States District Courthouse
 4                                 Room 568
                                   2 South Main Street
 5                                 Akron, Ohio  44308
                                   (330) 819-8676
 6

 7

 8

 9

10    Proceedings recorded by mechanical stenography, transcript
      produced by computer-aided transcription.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          P R O C E E D I N G S

2                               -  -  -

3              THE COURT:  Please be seated.

4              For the record, the court has before it today Case

10:16:05  5   Number 5:18cr406.  The case is United States of America

6        versus Willie Benton.

7              We're here today for pretrial.  The matter was

8        scheduled at 10:00.  It's now 10:15.

9              So it's clear for the record, the pretrial was

10:16:18  10  scheduled by agreement of counsel.  I believe it was

11       scheduled on August 2, if I'm not mistaken.

12             Counsel for the government, are you ready to

13       proceed?

14             MR. HOWELL:  Good morning.  Aaron Howell on behalf

10:16:28  15  of the United States.

16             THE COURT:  Counsel for the defendant?

17             MR. WHITNEY:  Yes, Your Honor.  We are ready to

18       proceed.

19             THE COURT:  Why were you not here at 10:00 at the

10:16:36  20  appointed hour for this matter?

21             MR. WHITNEY:  Your Honor, first of all, I meant no

22       disrespect by not being here at 10:00.  I am in a murder

23       trial in Summit County.  Today, as you remember is a call

24       day, so we are not in the murder trial.

10:16:50  25             My first thought was to try to continue this, but

                    Lori A. Callahan, RMR-CRR        (330) 252-6022

1    I thought I could come and -- I have many things to do

2    today.  One of the things obviously was a 10:00 hearing with

3    you.

4             THE COURT:  Which was scheduled when?

10:17:02  5             MR. WHITNEY:  A month ago.

6             THE COURT:  August 2 or thereabouts.

7             MR. WHITNEY:  At the arraignment.

8             THE COURT:  At the arraignment.  And I always ask

9    counsel, I always say, "Counsel, is this convenient for

10:17:10  10   you?"  It's not like I set this unilaterally.

11             MR. WHITNEY:  I totally agree.

12             THE COURT:  Go ahead.

13             MR. WHITNEY:  I am just saying if there's fault

14   here, Judge, it's my fault, not my client's fault.

10:17:19  15             I got a call about a hearing that's set for Friday

16   in front of the magistrate judge, a referral to the

17   magistrate judge, a motion to suppress.  I thought I would

18   come over here early, which I did, go downstairs, rather

19   than have a telephone conference, I was one floor away.

10:17:35  20             THE COURT:  So why not come here?

21             This case was scheduled first.  The Rules of

22   Superintendence in the State of Ohio, I've reviewed them,

23   and I follow the old rule.  I've followed it for many years.

24   As you know, Judge Murphy, Judge Schneiderman taught me a

10:17:49  25   long time ago, first scheduled goes first.

                Lori A. Callahan, RMR-CRR      (330) 252-6022

1          If someone is scheduled on a matter for trial,

2     then I will defer to another judge if there's a prior

3     scheduled matter.  Same here.

4          So did you contact or advise the magistrate judge

10:18:04  5     that scheduled this matter, the 10:00, just for today, did

6     you say, "Magistrate Judge Burke, I have a long-standing

7     matter in front of Judge Adams that was scheduled at 10:00

8     today involving a client who's facing an 851, a mandatory

9     ten years in prison."  And I want to be sure -- "20," even

10:18:27  10    worse, "and I'm going to go and deal with Judge Adams'

11    matter which was previously scheduled, and then I will come

12    back and address this matter since you just scheduled it,"

13    rather than let us wait and this matter has been scheduled a

14    long time?

10:18:40  15         You also have a motion pending you would like me

16    to continue in this matter.  Instead of doing that, you

17    decide, "Oh, I'll just go see -- I will go address the one

18    that was scheduled yesterday."  Not ask for a continuance,

19    not say, "Judge Burke, Judge Adams has a matter that's

10:18:54  20    pending at 10:00.  I will go deal with him, and my client

21    here who's facing 20 years, and then I will come down and

22    address the matter that you just now scheduled.

23         Now, have I misstated anything?

24         MR. WHITNEY:  No.  Except for the fact, Judge, I

10:19:09  25    came here -- I lost seven minutes.  I was here seven minutes

Lori A. Callahan, RMR-CRR        (330) 252-6022

1     after 10:00, and I apologize for that.  But I don't know why

2     my problem becomes my client's problem.

3          THE COURT:  Your client's problem we will talk

4     about in a moment.  It's your problem because you're an

10:19:25  5     officer of the court.  And when matters are scheduled, you

6     have an obligation to schedule -- to contact the court and

7     say to the other judge who's scheduled the matter one day

8     ago, one day ago I understand that matter was scheduled and

9     say, "Judge, I've got an important matter with Judge Adams,

10:19:42  10    and I've got a client who's facing 20 years and I am going

11    to come up and I am going to talk to Judge Adams and I am

12    going to talk to the prosecutor and then I will be back down

13    since you just scheduled it," or you say to the magistrate,

14    "I'm not available at 10:00 because of a previously

10:19:57  15    scheduled matter, a long scheduled matter with Judge Adams

16    and so, therefore, I need a continuance, Magistrate Burke,

17    because Judge Adams and I have an important matter we're

18    going address at 10:00.  So can we do this at 10:30?"

19          Did that happen?

10:20:12  20          MR. WHITNEY:  It did not, sir.  It should have.  I

21    apologize.  It should have happened, but it didn't.  I

22    thought being five or six minutes late would not be a

23    problem.

24          THE COURT:  Being on time doesn't matter?  I will

10:20:22  25    just be five or ten minutes for Judge Adams rather than say,

1    "I will come to Judge Adams and I will deal with his case

2    and I will be five or ten minutes with the magistrate."

3            MR. WHITNEY:  I meant no disrespect, Judge.

4            THE COURT:  I take it as disrespect.  It's very

10:20:34    5    easy to say to the magistrate one day ago, somebody calls

6    you and says, "Oh, by the way, I want you to be here at

7    10:00, or I want to do this by 10:00," instead of saying,

8    "Wait a minute.  I can't do that.  I've got an important

9    case with Judge Adams, and I've got a client who's facing 20

10:20:49    10    years and I want to be on time and I'm going to be ready to

11    address it."

12           MR. WHITNEY:  In my defense, Your Honor, I asked

13    Patty, my assistant, to notify the court that I would be a

14    few minutes late and she did.  And --

10:21:01    15           THE COURT:  Couldn't notify Judge Burke that "I'll

16    be a few minutes late," could she?

17           MR. WHITNEY:  I thought that would be a two-minute

18    call, and it was a five-minute call.

19           THE COURT:  Have a seat.

10:21:12    20           Mr. Howell, what is the -- what's the case, the

21    status of the case?

22           MR. HOWELL:  Your Honor, we've had ongoing

23    discussions with Mr. Whitney.  I've had meetings with him.

24    The discovery in this particular matter is quite voluminous

10:21:29    25    due to the fact that there was a Title III wiretap.

Lori A. Callahan, RMR-CRR        (330) 252-6022

1           Mr. Whitney has indicated to me -- he did contact

2      me prior to him filing the motion that he's not had the

3      opportunity to look through all of the calls or text

4      messages, that he's not adequately prepared to go at this

10:21:46   5      time due to the fact that he's not been able to review all

6      those.  So that's kind of the status.

7           THE COURT:  When did you provide the discovery?

8           MR. HOWELL:  That was on August 27.

9           THE COURT:  August 27.

10:21:56   10          MR. HOWELL:  That was of the Title III we provided

11     the contents of.

12          THE COURT:  And what does it consist of?  How

13     extensive is it?

14          MR. HOWELL:  Thousand of calls, text messages.

10:22:09   15          THE COURT:  What we do today has implications to

16     the codefendant?

17          MR. HOWELL:  Codefendant is set to plead guilty

18     tomorrow, Your Honor.

19          THE COURT:  He's entering a guilty plea tomorrow?

10:22:15   20          MR. HOWELL:  Correct.

21          THE COURT:  Have you had --

22          MR. HOWELL:  I am sorry, Your Honor.  I will say

23     that obviously we provided the same discovery to defense

24     counsel for Mr. Merida.  I will say, though, the contents of

10:22:31   25     the Title III are much more pertinent to Mr. Benton.  As you

1    will see in the indictment, while there are codefendants in

2    this matter, Count 1 is a conspiracy with these two

3    individuals.  That charges 500 grams or more.  That deals

4    with a delivery of a kilograms of cocaine for Mr. Merida to

5    Mr. Benton.

6            In Count 2 of the indictment, that refers to

7    Mr. Benton having 5 kilos or more.  That refers to not only

8    the stuff that Mr. Merida delivered that day, but also some

9    other kilograms that were found in Mr. Benton's residence.

10           The issue with Mr. Whitney is is that some of the

11   contents of that Title III referred to those other kilograms

12   so that's what he's going through to look through those.  So

13   that's why they're different as far as what the significance

14   of the Title III is for the codefendant versus Mr. Benton.

15           THE COURT:  Other than the amount of the drugs,

16   how does that affect, if any, the mandatory minimum, the 20

17   years, the 851, as a matter of fact, the guidelines, right?

18           MR. HOWELL:  No, Your Honor.  I guess in regards

19   to the 851, with Count 1, for Mr. Benton's sake, that

20   changes that to a mandatory 10-year and if he's convicted of

21   Count 2, it's 20 years.

22           THE COURT:  So the amount of cocaine, the 2 kilos

23   makes a difference?

24           MR. HOWELL:  It makes a very big difference.

25           THE COURT:  All right.  And so in terms of length

1   of trial, how long is it going to take?

2          MR. HOWELL:  Your Honor, I would indicate it would

3   take approximately two to three days for the United States

4   case.

5          THE COURT:  And in terms of plea negotiations, has

6   there been any?

7          MR. HOWELL:  There have been, Your Honor.  I've

8   had a couple of meetings with Mr. Whitney.  I know that he's

9   asked for permission and has spoke directly with Detective

10  Gilbride and the DEA Special Agent Wehrmeyer in an effort to

11  try to resolve the case.  That's ongoing.

12         Even this morning, Mr. Whitney did stop by my

13  office, did make some additional phone calls to the agents

14  trying to facilitate working the case out.  Obviously, we

15  filed the 851 that changed things a little bit from their

16  side, but there's still ongoing discussions in the hopes was

17  of resolving the case.

18         THE COURT:  Counsel for the defendant?

19         MR. WHITNEY:  Judge, I would indicate what

20  everything the government has said is true.

21         I would just add a couple of things.

22         Number one, he is charged in the -- in Count 1

23  with a conspiracy, Your Honor.  And he wants me to tell you

24  that he agrees with the Count 1, conspiracy.  The problem is

25  the conspiracy involved 4 kilos with the codefendants.

1    There were -- there was a Title III up for I think 60 days

2    or 30 days.  They acquired the information in May and June.

3    And then ultimately, he was arrested in late July.  He was

4    arraigned by you in early August.

10:25:41  5         Count 2 involves cocaine that was found in a safe

6    in one of the houses that they searched.

7         Everyone agrees that that cocaine is extremely low

8    quality.  In fact, it's unsalable.  I think even the

9    government would agree that it's extremely low quality.

10:26:04  10        To get to the enhancement that was filed on last

11   Friday -- we were negotiating without the enhancement until

12   last Friday.  Last Friday the enhancement was filed, because

13   I think the superiors in U.S. Attorney's Office indicated

14   that it should be filed.

10:26:23  15        It changed the whole complexion of our argument.

16   He went from a 10-year offense to a 20-year offense.  And

17   the only reason for that is because they're grouping

18   together the 4 from the conspiracy and the 3 they found in

19   the safe.  And the 3 we -- they found in the safe we allege

10:26:45  20   was not for sale.  It wasn't possessed with the intent for

21   sale.

22        And all of these text messages, and there are

23   thousands of them, Your Honor, are between -- that were

24   seized during the course on the Title III wiretap have to

10:27:02  25   do, I think, with exonerating at least his intent to

1    distribute those 3 keys, which would not -- then if that's

2    true, if we're able to demonstrate that, it would be a

3    guideline sentence, which is a 10-year guideline sentence

4    rather than an enhanced sentence.

10:27:23    5    So that's why I need more time.  I need time,

6    because as of last Friday, we weren't talking about an

7    enhanced case, and the case is only a month, about six weeks

8    old before this court anyway.

9    THE COURT:  August 2 was the arraignment.

10:27:39    10    MR. WHITNEY:  August 2.  But it's --

11    THE COURT:  August 27 discovery was provided.

12    MR. WHITNEY:  That's correct.

13    That's why I need more time other than the next

14    week or so to -- because of the surprise to me and my client

10:27:54    15    last Friday when the information was filed that increased

16    the penalty from 10 to 20 years.

17    THE COURT:  I would think just knowing some of the

18    new policies, you better be prepared.  Defendants -- all

19    these defendants better be prepared.  They're all going to

10:28:14    20    be staring at enhancements under the new regime, or the not

21    so new regime.

22    MR. WHITNEY:  I agree.  I think the procedure now

23    is they file them, and then they go down from that.  But

24    that wasn't the case until Friday, Judge.  We actually were

10:28:27    25    talking about that not happening in this case for a lot of

1   reasons, but -- so that's the reasons why -- and I wouldn't

2   ask this if we were talking about a few E-mails, but we're

3   talking about me going through E-mails that are literally in

4   the thousands for the months of -- for however they long

10:28:50   5   have them, and --

6               THE COURT:  I am sure your client can help you.  I

7   am sure he knows what messages were being sent and when.  So

8   he will be able to help narrow them if there's something

9   particular that --

10:29:00   10              MR. WHITNEY:  Narrow them by phone numbers, Your

11   Honor, and things of that nature, but still takes a great

12   deal of time.

13              THE COURT:  Well, it's interesting that Mr. Merida

14   will be pleading tomorrow.

10:29:11   15              MR. WHITNEY:  That's correct, but he didn't have

16   -- as the U.S. Attorney just indicated, he didn't have the

17   burden of these text messages making a difference in his

18   case, because he delivered -- he delivered -- alleged to

19   have delivered 4 kilos, which is under the enhancement

10:29:32   20   numbers.

21              THE COURT:  Let's look at a trial date then.  We

22   will grant the request subject to your client executing a

23   waiver of speedy trial, if he's willing to waive his right

24   to a speedy trial.

10:29:42   25              MR. WHITNEY:  He is.

Lori A. Callahan, RMR-CRR        (330) 252-6022

1       THE COURT:  Then we will grant a continuance into

2   early November.

3       That will give you more than 30 days.  That will

4   give you approximately -- I will do a week or two into

5   November.  November 13 is the day after Veteran's Day.

6       Let's deal with speedy trial waiver, speedy trial.

7   Discuss with your client whether he wishes to waive his

8   right to a speedy trial right now.  Speedy trial is October

9   5.

10      THE DEFENDANT:  Yes.

11      THE COURT:  Mr. Benton, have you gone over this

12  waiver of rights, Speedy Trial Act with your attorney?

13      THE DEFENDANT:  Yes.

14      THE COURT:  You consent to this matter being

15  continued that's currently scheduled for trial on October 1?

16      THE DEFENDANT:  Yes.

17      THE COURT:  Any questions about this at all?

18      THE DEFENDANT:  No.

19      THE COURT:  Based upon the representations of

20  counsel in writing and here in open court, I will grant the

21  request for a continuance.  I will declare the case complex.

22  As grounds for a continuance, I will find the ends of

23  justice are served by granting a motion for continuance.  It

24  outweighs the best interest of the public and the defendant

25  in a speedy trial, because failure to grant such a

Lori A. Callahan, RMR-CRR       (330) 252-6022

1    continuance would deny counsel for the defendant reasonable

2    time necessary for effective preparation, taking into

3    account the exercise of due diligence, and I will approve

4    the waiver.

10:31:50   5          Trial will be November 13.  Schedule a final

6    pretrial about two weeks earlier.

7          COURTROOM DEPUTY:  Thursday, November 1.

8          THE COURT:  Thursday, November 1 at 10:00.

9          Is that convenient for the government?

10:32:25   10          MR. HOWELL:  Your Honor, currently we have -- Mr

11   Whitney and I have a jury trial scheduled with Judge Lioi

12   that if it does go we are currently scheduled that day, that

13   week.  It's a police shooting case.

14          THE COURT:  All right.  Well, then let's go back

10:32:41   15   the next week, the week prior.

16          Thursday, October 25?

17          MR. HOWELL:  That works for me, Your Honor.

18          MR. WHITNEY:  Likewise.

19          THE COURT:  11:00.  That will be the last date the

10:32:58   20   court will accept a plea other than a plea to the

21   indictment, and then obviously that will have implications

22   for acceptance of responsibility if there's a plea after

23   that date.  That's the final date that I will accept any

24   plea.

10:33:07   25          Any other questions, Counsel, before we adjourn?

Lori A. Callahan, RMR-CRR          (330) 252-6022

1          MR. HOWELL:  No, Your Honor.  Thank you.

2          MR. WHITNEY:  There's one issue, one procedural I

3    would like to talk to the court about if we could talk at

4    sidebar for a minute, or we can talk right here.

10:33:22   5          THE COURT:  You can talk right here.

6          MR. WHITNEY:  Okay.  I just wanted to know the

7    court's feeling about whether or not if, for instance, the

8    defendant were to plead to Count 1, which is a conspiracy

9    involving 4 kilos, the question becomes because of this

10:33:36  10   information that was filed alleging that -- and because of

11   Count 1 that says there's an additional 3 kilos found in

12   this safe, I am trying to -- basically trying to figure out,

13   is there a way that we could try this issue to the court

14   rather than to a jury?

10:33:55  15          And I know that this is an issue that probably has

16   to be determined by finder of fact, either by a waiver, of

17   the amount of drug, but what I am trying to -- what I am

18   going to talk to the superiors here in the U.S. Attorney's

19   Office of doing is perhaps we could plead to Count 1 and

10:34:18  20   then consider Count -- not Count 2, but consider the other 3

21   kilos as relevant conduct, that the court then could

22   determine whether or not it feels that, in fact, that it was

23   possessed with the intent to distribute as a matter of a

24   sentencing issue rather than a factual finding.

10:34:39  25          THE COURT:  What would the -- how would we go

1   about doing that?  I mean I could do it in the context of an

2   objection to a PSI, I suppose, but what's the burden of

3   proof?  Is it preponderance of the evidence?

4        MR. WHITNEY:  It does change the burden of proof.

10:34:54  5        THE COURT:  That changes the burden of proof,

6   number one.

7        Number two, if there's specific evidence, meaning

8   text messages, it's premature, you probably don't know the

9   answer to that, that indicates those drugs were not likely

10:35:06  10   to be sold, or something to that effect, then that's

11   something else I have to consider and then, of course, I

12   would have to hear from the agents involved, the agents who

13   actually supervised -- I think this is a long-standing

14   wiretap going on for many months or many years?

10:35:23  15        MR. HOWELL:  I think just approximately a month

16   and a half to two months.

17        THE COURT:  So it wasn't that long.  So we would

18   know or be able to know, I would think, through specific

19   text messages or evidence whether there's an intent to

10:35:34  20   distribute.

21        I mean, thinking out loud, I don't know the

22   answer, other than it changes the burden of proof, and

23   again, I don't know what evidence you have.  Maybe the

24   better way of proceeding is waiting for you to go through

10:35:48  25   all the discovery and get a sense of exactly what's in

Lori A. Callahan, RMR-CRR        (330) 252-6022

1    there.

2             MR. WHITNEY:  But if the U.S. Attorney Office

3    would agree to a waiver, a jury waiver, would the court be

4    inclined to accept that waiver just in this instance?

10:36:01    5             THE COURT:  I don't know.  I really don't know, to

6    be honest with you.  I don't know.  I mean it's possible.  I

7    don't know.  And I can't engage in the plea negotiation or

8    plea bargain.  I can't get myself into any of that, and so,

9    you know, you've talked to the agent.  What are the agents

10:36:21   10   telling you?

11            MR. WHITNEY:  In terms of facts?

12            THE COURT:  In terms of the intent, the issue that

13   you're raising.  What are the agents saying?  What's their

14   position?

10:36:29   15            MR. WHITNEY:  Their position is they don't fully

16   agree with what we're saying.

17            THE COURT:  They don't fully agree or they don't

18   fully disagree?

19            MR. WHITNEY:  They -- it's a long story, Judge.  I

10:36:43   20   think there are other sales that we think are mixed up with

21   all this and so forth.

22            THE COURT:  Let's do this.

23            When you've completed your discovery, then you

24   notify the clerk and we will set another status before the

10:36:59   25   pretrial, and then we can decide among ourselves whether the

                    Lori A. Callahan, RMR-CRR       (330) 252-6022

1    government would consent to a -- me deciding the issue or

2    procedurally how I could go about deciding the issue.

3    That's assuming that the parties can't work it out between

4    themselves, because I think you will be better prepared to

10:37:18    5    sort of decide that issue, too, once you look at the text

6    messages, the E-mails, or whatever other -- the wiretaps, I

7    should say, the communications between the parties and you

8    will get a better understanding of how strong that case

9    might be.

10:37:29    10    MR. WHITNEY:  Yes, sir.

11    THE COURT:  Because otherwise -- I mean I'm not

12    opposed to doing it, but it's the first time I've heard or

13    seen such a procedure being utilized, but all right.

14    Do you want to set another date now?  I don't know

10:37:48    15    how long it's going to take you to work your way through

16    these wiretaps.

17    MR. WHITNEY:  I think it's better I call to make

18    sure, Judge, so I don't -- I will call and ask Chris to set

19    it up?

10:38:03    20    THE COURT:  Get Aaron on the phone.  Maybe you can

21    do it -- Mr. Howell on the phone, you on the phone, and when

22    you reach an appropriate time and then we can discuss it if

23    you would like.  We will have a court reporter so there's no

24    secrets from Mr. Benton.  He will understand.  You can do it

10:38:18    25    that way, or you can contact me.  We can set something

1    formal.  Either way.

2         Anything else?

3         MR. WHITNEY:  Again, I apologize.  I meant nothing

4    personal.  It was an error of judgment on my fault.

10:38:27  5    THE COURT:  Counsel, with all due respect, it's

6    happened before.  Not with you.  There's others.  There's a

7    very simple way.  You tell the magistrate "I have a matter

8    in front of Judge Adams.  It was scheduled months ago."  And

9    that should take priority.

10:38:39  10    I am repeating myself.  You know Judge Murphy and

11   Judge Schneiderman very, very well, as well as I do.  As a

12   young judge in 1999, I talked to them about it.  It's a very

13   simple rule.  Whatever is scheduled first, the later

14   scheduled matter defers to the first.  I have followed that

10:38:58  15   rule on every case in 20 years on the bench, and I expect

16   the attorneys to do the same.  I give them the same

17   consideration.  I ask them to give it to me.  Just simply

18   tell the magistrate, "I'll be down after I address my

19   previously scheduled matter."

10:39:13  20    Hopefully enough said.  It won't happen again.

21   Thank you very much.

22

23

24

25

Lori A. Callahan, RMR-CRR        (330) 252-6022

1                          C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled

5     matter.

6

7

8                  s/Lori A. Callahan
                   Lori Ann Callahan, RMR-CRR
9                  U.S. District Court, Suite 568
                   2 South Main Street
10                 Akron, Ohio  44308
                   (330) 252-6022
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25