1       UNITED STATES DISTRICT COURT
        NORTHERN DISTRICT OF OHIO
2         EASTERN DIVISION

3 UNITED STATES OF AMERICA,   Case No. 5:18cr406
             Akron, Ohio
4     Plaintiff,    November 2, 2018

5   vs.

6 WILLIE BENTON, JR.,

7     Defendant.

8
        TRANSCRIPT OF PROCEEDINGS
9     BEFORE THE HONORABLE JOHN R. ADAMS
      UNITED STATES DISTRICT JUDGE
10

11        CHANGE OF PLEA

12

13 APPEARANCES:

 For the Government:   Peter E. Daly
14           Office of the U.S. Attorney
           208 Federal Building
15           2 South Main Street
           Akron, Ohio  44308
16           330-761-0529

17

 For the Defendant:   Lawrence J. Whitney, Esq.
18           Burdon & Merlitti
           Suite 201
19           137 South Main Street
           Akron, Ohio  44308
20           (330) 253-7171

21

22

23

24

25

    Lori A. Callahan, RMR-CRR   (330) 252-6022

1

2

3       Court Reporter:              Lori Ann Callahan, RMR-CRR
                                     United States District Courthouse
4                                    Room 568
                                     2 South Main Street
5                                    Akron, Ohio  44308
                                     (330) 819-8676
6

7

8

9

10      Proceedings recorded by mechanical stenography, transcript
        produced by computer-aided transcription.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        P R O C E E D I N G S

 2                             -  -  -

 3              THE COURT:  For the record, the court has before

 4    it today is Case Number 5:18cr406.  The case is United

 5    States of America versus Willie R. Benton.

 6              Counsel for the government, are you ready to

 7    proceed?

 8              MR. DALY:  Good morning, Your Honor.  Peter Daly

 9    on behalf of the government.  Yes, we are.

10              THE COURT:  On behalf of the defendant?

11              MR. WHITNEY:  Yes, Your Honor.  We are ready to

12    proceed.

13              THE COURT:  It's my understanding the parties have

14    reached a plea agreement in this case, and I have a written

15    agreement in front of me that's been executed by the

16    parties.

17              Mr. Benton, is it your desire today to plead

18    guilty pursuant to this plea agreement to one count of

19    conspiracy to possess a controlled substance with intent to

20    distribute?

21              Is that your desire?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Before I can decide to accept your

24    plea, it's necessary that I ask a series of questions of you

25    to be certain that you understand the rights that you're
```

Lori A. Callahan, RMR-CRR        (330) 252-6022

1    waiving by entering this plea, the possible consequences of

2    this plea, to make certain that your plea is voluntary, also

3    make certain you understand the terms of your plea

4    agreement.

10:16:29  5         Before I begin with those questions, you'll be

6    placed under oath.  You will be sworn to tell the truth.

7         Because you're in custody, you can remain seated,

8    use the microphone if you would, and we will begin in that

9    fashion.

10:16:40  10         Ms. Kestner, would you administer the oath?

11         (Defendant sworn.)

12         THE COURT:  You are now under oath, Mr. Benton.

13    It's important that all of your answers to my questions be

14    truthful.  Any answers that are later shown to be false

10:17:01  15    could be used against you in a possible prosecution for

16    perjury or making a false statement.

17         Do you understand those things?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Also, if you have any questions about

10:17:09  20    any of the matters I am about to review, please let me know

21    and now is the time for those questions, and we will address

22    them as need be.

23         First of all, state your full name and age for the

24    record.

10:17:21  25         THE DEFENDANT:  Willie Robert Benton, Jr., 36.

Lori A. Callahan, RMR-CRR      (330) 252-6022

1          THE COURT:  Are you under the influence of any

2   type of drugs, alcohol or medicine that might affect your

3   ability to understand these proceedings?

4          THE DEFENDANT:  No.

10:17:33   5          THE COURT:  Do you understand the nature of the

6   charges against you in this case?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Have you reviewed the indictment with

9   Mr. Whitney and you understand all of the various charges?

10:17:41  10          THE DEFENDANT:  Yes.

11          THE COURT:  Have you gone over with Mr. Whitney

12   all the evidence in the case, possible defenses, all matters

13   pertaining to your case?

14          THE DEFENDANT:  Yes.

10:17:49  15          THE COURT:  Have you had adequate time to do that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Are you satisfied so far with his work

18   for you in this case?

19          THE DEFENDANT:  Yes, I am.

10:17:56  20          THE COURT:  There's a written plea agreement

21   between yourself and the government.

22          Did you fully read this agreement before you

23   signed it?

24          THE DEFENDANT:  Yes.

10:18:03  25          THE COURT:  Any problems reading or writing?

1       THE DEFENDANT:  No.

2       THE COURT:  Did you go over and discuss this

3   agreement in full with Mr. Whitney before you signed it?

4       THE DEFENDANT:  Yes.

10:18:10  5       THE COURT:  Did you have adequate time to do that?

6       THE DEFENDANT:  Yes.

7       THE COURT:  Your plea agreement sets forth certain

8   recommendations to me with regard to the type of sentence I

9   should impose.

10:18:19  10       Those recommendations I will consider, but I'm not

11   required to follow those recommendations.  If for some

12   reason I do not follow the recommendation of the parties and

13   you are unhappy with your sentence, you will not be able to

14   withdraw your plea and start the case over.

10:18:33  15       You may have the right to appeal that sentence to

16   a higher court, but not to withdraw the plea if you are

17   unhappy with your sentence.

18       Do you understand that, as well?

19       THE DEFENDANT:  Yes, I do.

10:18:44  20       THE COURT:  Has anyone made any type of promises

21   or assurances to you to persuade you to sign this agreement?

22       THE DEFENDANT:  No.

23       THE COURT:  You understand, sir, by virtue of this

24   plea that you may be deprived of valuable civil rights.  As

10:18:54  25   a convicted felon, as you know, you cannot possess a gun.

Lori A. Callahan, RMR-CRR       (330) 252-6022

1    It's important to remember that.

2         If you are found in possession of a firearm again

3    once you're released from prison, you will go back to prison

4    for, more likely than not, up to ten years if that's the

10:19:07    5    case.  So I hope you understand that.

6         You also may lose other valuable rights, such as

7    the right to vote, if you are incarcerated, the right to

8    hold public office, the right to serve on a jury.

9         Do you understand those things?

10:19:17    10    THE DEFENDANT:  Yes.

11    THE COURT:  I am going to turn now to your plea

12    agreement and go through it by page and refer to it by page

13    and paragraph.

14         If you have any questions, please let me know.

10:19:26    15    You can refer to it, read along if you would like, and

16    follow along as I address all the various provisions of your

17    plea agreement.  I will begin at page 2, and there is a --

18    we begin with the statutory penalties for this offense.

19         At paragraph 2 on page 2, there's a maximum term

10:19:46    20    of imprisonment for this offense of 40 years.  There's a

21    minimum term of imprisonment of five years.

22         There's a maximum statutory fine of $5 million and

23    there's a minimum period of what we call supervised release,

24    which I will explain in a greater detail in a minute, of

10:20:01    25    four years.

1        And there's a special assessment of $100.

2        Do you understand that is the -- at least

3   initially the statutory penalties for this offense?

4        THE DEFENDANT:  Yes.

10:20:12  5   THE COURT:  Also, you should be aware that the

6   government has filed a statutory enhancement which changes

7   those statutory penalties.  That's in paragraph 4.  Because

8   of your prior felony drug conviction, the government has

9   invoked the statutory enhancement, as we refer to it.

10:20:29  10  Consequently, the statutory penalty for this offense is a

11  mandatory of 10 years, means I can't go below 10 years, and

12  a possible maximum term of life imprisonment.

13       There's a $10 million fine.

14       And there's a period of at least eight years of

10:20:48  15  supervised release.

16       Do you understand that is the statutory

17  enhancement that applies in this case?

18       THE DEFENDANT:  Yes.

19       THE COURT:  If you turn to page 3, we will begin

10:21:02  20  at the top.

21       There's a special assessment I've already

22  referenced.

23       And paragraph 6 references the forfeiture.  You

24  are giving up any interest you might have in the $94,190 in

10:21:12  25  U.S. currency that was found here along with a handgun that

Lori A. Callahan, RMR-CRR     (330) 252-6022

1    was related to this offense.

2            Those are two items that you agree will be

3    forfeited to the government.

4            THE DEFENDANT:  Yes.

10:21:24  5            THE COURT:  And also down at the bottom of page 3,

6    there is a provision I mentioned earlier called supervised

7    release.

8            When you are released from custody, whatever that

9    period of time may be, you will be placed on supervised

10:21:37  10   release.  It will be at least eight years.  And there will

11   be conditions that you will be required to follow and abide

12   by.

13           And those conditions are many things such things

14   as not -- obviously not committing any new criminal offense,

10:21:49  15   not using drugs, things of that nature.  And if you were to

16   violate your supervised release, it's kind of like parole in

17   the state system, although it's more strictly enforced, then

18   you would go back to prison for a lengthy period of time

19   depending again on the nature of the violation.

10:22:06  20           Do you understand that?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Then turn to page 4.

23           I am required to ask, are you a U.S. citizen,

24   please?

10:22:13  25           THE DEFENDANT:  Yes, I am.

                    Lori A. Callahan, RMR-CRR      (330) 252-6022

1          THE COURT:  Thank you.

2          Then we begin at page 4 down in the middle, a

3    discussion about, in essence, your agreement to plead guilty

4    to Count 1.  The government is going to dismiss Count 2 as

10:22:24  5    part of the plea agreement.

6          Down at the bottom, we have the elements of the

7    offense to which you are pleading guilty, and that is the

8    conspiracy count, and it outlines the legal elements of the

9    criminal history offense here.

10:22:38  10         Do you have any questions about those things?

11          THE DEFENDANT:  No.

12          THE COURT:  Then we turn to page 5.  We have a

13    discussion or begin the discussion of sentencing and all

14    matters pertaining to sentencing.  It's what's called

10:22:54  15    sentencing stipulations and agreements.

16          Paragraph 14 references the sentencing guidelines.

17    We will discuss them in greater detail in a few moments.

18    This paragraph outlines the general obligations of the

19    court.

10:23:06  20         The sentencing rests with the discretion of the

21    court, and the federal sentencing law requires me to impose

22    a sentence which is sufficient, but not greater than

23    necessary, to comply with the purposes of 18, United States

24    Code, 3553(a).

10:23:20  25         Those purposes aren't spelled out, but I will tell

1     you what they are at this point.  The purposes are such

2     things as just punishment, adequate deterrence, protect the

3     public, reflect the seriousness of the offense, improve the

4     offender's conduct and condition.  Those are the terms the

10:23:38  5     statute refers to.

6           And then I am also required to consider, among

7     those factors, the other factors, the advisory sentencing

8     guidelines and deciding whether or not to use those

9     guidelines to impose a sentence within those guidelines.

10:23:52  10    The words "depart" or "vary" means to go above or below the

11     guidelines.

12           All those things I must consider in deciding your

13     sentence.

14           You understand those things?

10:24:02  15          THE DEFENDANT:  Yes.

16           THE COURT:  Then we continue on page 5.  Paragraph

17     15 references a presentence report.

18           If I accept this plea and you continue to wish to

19     plead guilty, then you will be referred down to the

10:24:16  20    probation department for the preparation of a report.  You

21     will be asked to give information for that report.  Your

22     attorney may be present when you are interviewed by the

23     probation officer.

24           It's important that the information you provide is

10:24:26  25    truthful and accurate.  If it's not, then that could be used

1    or adversely affect your sentence, and once the report is

2    completed, you will have an opportunity to review it,

3    discuss it with your attorney.  You should do that.

4         You will have a right to object to any part of the

10:24:42  5    report you believe is erroneous that might affect your

6    sentence, and then you will have a chance to informally work

7    those things out with the probation officer.  If you cannot,

8    then I will resolve them at the time of the sentencing

9    hearing.

10:24:56  10        I will hear from you at the time of that

11   sentencing hearing.  That's what's called allocution, down

12   at paragraph 17, and I will also hear from your attorney and

13   the government's attorney about the kind of sentence that I

14   should impose.

10:25:09  15        You understand those things?

16        THE DEFENDANT:  Yes, I do.

17        THE COURT:  All right.  Then we turn to page 6.

18   We have what is a guideline computation.  The parties have

19   not agreed which guideline calculation I should use.  So I

10:25:26  20   will go through both.

21        We won't know with specificity which guideline

22   range or offense level I should say will apply until we have

23   conducted the sentencing hearing, but we will go through

24   each calculation that the parties believe applies.

10:25:42  25        I assume Mr. Whitney has gone over the sentencing

1    table before you today?

2              THE DEFENDANT:  Yes.

3              THE COURT:  We will go over it one more time.  If

4    you have any questions, now is the time.

10:25:50  5              Counsel for the government, do we have a rough

6    idea what his criminal history category might be?

7              MR. WHITNEY:  I can answer that, Judge.

8              THE COURT:  All right.  You can answer.

9              MR. WHITNEY:  The government had him at nine

10:26:04  10   criminal history points.  I have him as something more than

11   that.  I had him at about 11.  So we -- he's in a serious

12   category, either V or VI.

13             THE COURT:  Well, nine would put him at VI.

14   Eleven would put him at V.

10:26:20  15             MR. WHITNEY:  So IV or V.

16             THE COURT:  Okay.  So he needs 13 points to be a

17   VI.

18             All right.  I know you don't have the table in

19   front of you.  That's -- so it's a IV or V.  So let's go

10:26:28  20   through this, Mr. Benton, and, again, the issue here is, as

21   Mr. Whitney has explained it to us to before, involves the

22   difference in the parties' view as to the amount of cocaine

23   in question.

24             So the government's going to argue that an offense

10:26:48  25   level 36 would apply.  And at offense level 36, we would

Lori A. Callahan, RMR-CRR      (330) 252-6022

1    start there, and if you, by entering the plea, accepting

2    responsibility for your conduct, if that continues, then you

3    would be entitled to a three-level downward adjustment and

4    that would place you at offense level 33.

10:27:08   5         Offense level 33, if your criminal history

6    category is a IV, and that is something the probation

7    department will have to ultimately determine or make a

8    recommendation, at a 33, Criminal History Category IV, the

9    guideline range is 188 to 235 months.

10:27:28   10        If your criminal history category is a V, then the

11   guideline range will be 210 to 262 months.

12        Do you understand that?

13        THE DEFENDANT:  Yes, I do.

14        THE COURT:  Now, if Mr. Whitney's argument is

10:27:42   15   going to be that the offense level should be a 32 and that I

16   should deduct three levels from the 32, which would place

17   you at a 29, his argument would be 121 to 151 months should

18   apply.  Or if your Criminal History Category is a V, the

19   higher range would be 140 to 175 months.

10:28:04   20        That's the argument that he's going to make and

21   that I am going to have to decide that issue at the time of

22   the sentencing hearing.

23        You understand how that works?

24        THE DEFENDANT:  Yes.

10:28:14   25        THE COURT:  Do you understand what the possible

1          guideline ranges may be in this case?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  The guideline range -- and, again, the

4          guidelines are the benchmark.  They're the starting point.

10:28:23   5                    In this case, actually the starting point is the

6          120 months.  That's the mandatory minimum is the starting

7          point, and we determine the guidelines and whether or not to

8          use those guidelines in deciding a sentence or to go --

9          again, I can go above the guidelines.  I can't go below

10:28:40  10          mandatory minimum of 10 years.  That's the bottom I can go.

11                    Do you understand that?

12                    THE DEFENDANT:  Yes, I do.

13                    THE COURT:  Any questions about any of those

14          things?

10:28:46  15                    THE DEFENDANT:  No.

16                    THE COURT:  Let's turn to page 7, and that is

17          what's called waiver of appeal and post-conviction attack

18          provision.

19                    Did you go over and discuss this with Mr. Whitney?

10:29:00  20                    THE DEFENDANT:  Yes.

21                    THE COURT:  I will go over it with you one more

22          time.

23                    In this case, you are waiving your right to appeal

24          or to challenge your sentence or your conviction in any way,

10:29:08  25          except you do reserve the right to appeal, appeal only, any

1     punishment in excess of the statutory maximum.  We know

2     that's not going to happen just given the maximum I believe

3     is life in this case because of the enhancement.  So that is

4     not going to happen, and so we know that.

10:29:27  5     Second is my determination of the guideline range.

6     So if for some reason we have a hearing and I don't adopt

7     the argument Mr. Whitney makes regarding the guideline

8     calculation, then that's an issue that you can appeal.

9     The issue is the amount of cocaine that should be

10:29:43  10    attributed to you or used in a calculation of the

11    guidelines.  That issue has been preserved for appeal.

12    The second issue that can be, or the next issue I

13    should say is your criminal history category.  We've gone

14    back and forth whether it's a IV or a V.  We won't know that

10:29:59  15    until your criminal history is scored.

16    We will use your prior criminal history record.

17    There are various points that are scored, and then we will

18    make a determination.  Probation will make a recommendation,

19    but that issue could be appealed, as well.

10:30:11  20    And then lastly, the only other issues for appeal

21    would be the issues regarding conduct of the lawyers.  If it

22    was later shown the government's lawyers engaged in some

23    misconduct in this prosecution, or your own lawyer was

24    ineffective, as we call it, then those are the only other

10:30:28  25    remaining issues that might be the subject of an appeal.

1          Do you understand those things?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Nothing beyond what I've already

4     described could be appealed, and there would be no right to

10:30:39  5     file any other separate civil action trying to set aside

6     your conviction in any way permitted under this agreement.

7          Is that clear?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Then the statute of

10:30:49 10     limitations, the waiver provision at paragraph 22.

11          Did you go over and discuss it with Mr. Whitney,

12     this provision?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Did you understand it?

10:31:00 15          THE DEFENDANT:  Yes.

16          THE COURT:  Basically I will go through it just

17     one more time by summary.

18          Under this agreement, if your conviction is later

19     set aside on appeal or overturned or vacated in any way,

10:31:11 20     then the government could continue this prosecution.  They

21     would have one year from the date of those events to once

22     again reinstate and pursue this case.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

10:31:21 25          THE COURT:  All right.  Any questions about

Lori A. Callahan, RMR-CRR          (330) 252-6022

1    anything I've gone over so far?

2              THE DEFENDANT:  No.

3              THE COURT:  On page 9, there's a provision,

4    paragraph 27.  That is consequences of breaching this

10:31:33  5    agreement.  If for some reason you attempt to withdraw your

6    guilty plea or there's some other issue as described in

7    paragraph 27, then the government is released from all of

8    its obligations under this agreement.  They can continue to

9    make any charges, make any recommendations they wish, that

10:31:50  10    would otherwise be prohibited under this agreement, again,

11    should the agreement be breached.

12              Is that clear?

13              THE DEFENDANT:  Yes.

14              THE COURT:  All right.  Then let's turn to the

10:31:58  15    very first part of the agreement, page 1.

16              There's a provision called a waiver of your

17    constitutional trial rights.  Under this agreement or

18    certainly under our constitution, I should say, in the laws

19    of the United States, you have a constitutional right to a

10:32:13  20    trial in this case.

21              That trial could be to a jury if you would like,

22    or in the alternative, I could hear the case, hear the

23    evidence and decide your guilt or innocence.  That would

24    require the consent of the government.

10:32:26  25              First question is, however, sir, do you understand

Lori A. Callahan, RMR-CRR        (330) 252-6022

1    you have a right to a trial in this case, Mr. Benton?

2             THE DEFENDANT:  Yes.

3             THE COURT:  Secondly, do you wish to waive your

4    right to a trial and plead guilty here today?

10:32:36  5          THE DEFENDANT:  Yes, I do.

6             THE COURT:  Even though you've indicated you would

7    like to plead guilty, sir, I am still required to explain

8    the rights that you would have at trial.  I will go over

9    those rights with you, explain them to you.  I will ask if

10:32:47  10   you understand them, and I will ask if you're voluntarily

11   waiving those rights.  If you have any questions at all,

12   please let me know and we will explain further.

13            Is that clear?

14            THE DEFENDANT:  Yes.

10:32:55  15          THE COURT:  All right.  First of all, if there

16   were a trial in this case, you would be presumed innocent.

17   And the government would be required to prove you guilty by

18   competent evidence beyond a reasonable doubt.  That's a

19   standard that will be required to meet.

10:33:07  20          Do you understand those rights?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Are you voluntarily waiving those

23   rights?

24            THE DEFENDANT:  Yes.

10:33:11  25          THE COURT:  Secondly, if there were a trial in

1    this case, witnesses for the government would have to come

2    forward and testify in your presence.

3            Your attorney could cross-examine those witnesses,

4    ask questions of them for you.  He could object to any

10:33:24  5    evidence the government offers and he could offer evidence

6    on your behalf if you would like.  You're not required to

7    present any evidence in your defense, but you would

8    certainly have that right.

9            Do you understand those rights?

10:33:34  10            THE DEFENDANT:  Yes.

11            THE COURT:  Are you voluntarily waiving those

12    rights?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Additionally, if there were a trial in

10:33:39  15    this case, you could call witnesses to testify in your

16    defense.  If those witnesses failed or refused to appear, I

17    could order them to appear by the issuance of a subpoena.

18    That's a form of a court order.

19            Do you understand those rights?

10:33:51  20            THE DEFENDANT:  Yes.

21            THE COURT:  And are you voluntarily waiving those

22    rights?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Additionally, sir, if there were a

10:33:56  25    trial, you could testify.  You could tell myself or a jury

1    your side of this case.  In the alternative, you would have

2    a right not to testify and that's a right that cannot be

3    used against you at trial.

4            Do you understand that, as well?

10:34:07    5    THE DEFENDANT:  Yes.

6            THE COURT:  Also, sir, you do have a right to

7    counsel.  I believe you have a retained attorney, but if for

8    some reason you did not have sufficient funds to hire an

9    attorney, we would appoint one for you and provide you the

10:34:20    10    necessary papers, what have you, for your defense in this

11    matter, as well.

12            Do you understand that right?

13            THE DEFENDANT:  Yes.

14            THE COURT:  Do you understand if I accept your

10:34:26    15    guilty plea here today, you will waive all the rights I've

16    just described, there will be no trial, and I will find you

17    guilty of this offense?

18            THE DEFENDANT:  Yes.

19            THE COURT:  All right.  Before we turn to the

10:34:36    20    factual basis, is there not an outstanding -- a pending

21    outstanding motion to suppress?

22            Is that still part of the record in this case?

23            MR. WHITNEY:  No, Your Honor.

24            THE COURT:  There's not.  Perhaps I am confusing

10:34:46    25    this with another matter.  I apologize.

                Lori A. Callahan, RMR-CRR      (330) 252-6022

1        So with regard to the factual basis of the plea,

2   sir, there's a detailed recitation of the conduct that gives

3   rise to this offense.  It's described in paragraph 23.  Some

4   of this, of course, is evidence I would believe is from

10:35:10  5   wiretap evidence.

6        Did you read all of the various paragraphs and

7   paragraphs -- I should say paragraph 23, subparagraph A?

8        THE DEFENDANT:  Yes, I've read it.

9        THE COURT:  You admit that you engaged in the

10:35:23  10   conduct described here?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Are you pleading guilty because you

13   are guilty?

14        THE DEFENDANT:  Yes, I am.

10:35:29  15        THE COURT:  Do you have any questions at all?

16        THE DEFENDANT:  No.

17        THE COURT:  Has anyone tried to force you, coerce

18   you, threaten you in any way to enter this plea?

19        THE DEFENDANT:  Not at all.

10:35:38  20        THE COURT:  Counsel for the government, have I

21   overlooked anything in my inquiry?

22        MR. DALY:  I don't believe so, Your Honor.  Thank

23   you.

24        THE COURT:  Mr. Whitney?

10:35:43  25        MR. WHITNEY:  Judge, Mr. Benton just wanted me to

Lori A. Callahan, RMR-CRR       (330) 252-6022

1  thank the court for continuing the case a couple of times so

2  he could inquire information that I think was relevant in

3  the government's position regarding Count 2.  And he

4  wanted -- and he wanted to make sure, and I think the

10:36:03  5  agreement does, in fact, indicate that, that his plea of

6  guilty today is to Count 1, which involved the drugs

7  delivered to him on June 26, the 4 kilos, almost 4 kilos.

8  The count -- the second count had to do with the

9  drugs that were found in the safe.  He does know that those

10:36:28  10  drugs would be or the government now will contend that they

11  are relevant conduct and that, as you can see, are the

12  issues we will have to decide.

13  But he appreciates the court giving him the

14  opportunity to acquire the evidence that he needed and

10:36:45  15  wanted me to thank the court for that and to apologize to

16  the court if we disrupted the administration of the case.

17  We will probably be requesting that the drug that

18  was found in the safe be analyzed by a private chemist, and

19  I will probably be motioning the court at some time in the

10:37:06  20  future to do that, and I know that's -- we'll figure out a

21  way to do that.

22  And he wants also to thank the government for its

23  consideration in this case regarding Count 2.  And he just

24  wanted to make sure that the -- that's the reason why that

10:37:20  25  was inserted in the plea agreement, that 3,900 grams is what

1    he intended -- possessed with the intent to distribute.

2    Thank you.

3              THE COURT:  All right, Counsel.  Just very

4    quickly.  If there's going to be a protocol or if you're

10:37:34  5    going to ask that the drug be tested, you obviously can make

6    that request.  Hopefully the easiest way to do it would be

7    for the government and counsel for the defendant, for the

8    two of you to confer, and see if you can come up with some

9    agreed protocol for that testing.

10:37:56  10             So that -- if that's what would you like to do, I

11   know we're going to have to decide that issue at a

12   sentencing hearing.  You can do the testing and make a

13   determination.

14             I don't know.  Has the government tested the drugs

10:38:11  15   yet?

16             MR. WHITNEY:  Yes, Your Honor.  BCI tested it, but

17   and -- found that one of the issues is they found some

18   cocaine base, and as I think I've indicated to you and the

19   government, that the agents who picked it up, and Willie

10:38:27  20   always thought it was cocaine, a cocaine base, that makes a

21   big difference in the guidelines, so that would be the

22   reason for our analyzing.

23             THE COURT:  All right.  Well, anything you can do

24   to make -- to help the court resolve the issue, it would be

10:38:41  25   helpful if you are going to agree to do that, but otherwise,

1    we will take the motion under advisement and deal with it as

2    quickly as we can.

3            Mr. Benton, at this time, the court's now prepared

4    to finalize the plea.

10:38:53  5         Do you have any further questions before I

6    finalize this plea?

7            THE DEFENDANT:  No.

8            THE COURT:  Do you understand, sir -- you've heard

9    me describe the rights that you're waiving by entering this

10:39:02  10   plea.  You've heard me describe the possible consequences of

11   this plea.  Knowing those things, how do you plead to one

12   count of conspiracy to possess a controlled substance with

13   intent to distribute?

14           How do you plead to that offense?

10:39:12  15        THE DEFENDANT:  Guilty.

16           THE COURT:  I will make a finding in this case

17   Mr. Benton is fully competent and capable of entering an

18   informed plea.  His plea of guilty is a knowing and

19   voluntary plea, supported by an independent basis, in fact,

10:39:23  20   containing each of the essential elements of the offense.  I

21   will now adjudge him guilty of this offense.

22           We will approve his plea agreement by my signature

23   on today's date of November 2, 2018.

24           Counsel, do we have any rough idea how long it

10:39:40  25   might take to have the testing done?  I mean, we're going to

1    get -- by rule I'm required to give the probation 14 weeks,

2    but I don't know how long the testing is going to take.

3           Do we know?

4           MR. DALY:  Your Honor, I believe it would depend

10:39:55  5    on the defense lab, the lab they choose for the independent

6    testing, but I would think that 14 weeks should be

7    sufficient.

8           MR. WHITNEY:  I think so, Judge.  I've got a lab

9    that I've used before, and I think the government -- if we

10:40:07  10   do the testing, the government has given me permission to

11   talk to the analyst from the BCI and I may go up there and

12   that may resolve some of the issues here, but if that's the

13   case, then we wouldn't have to get it tested.  But I've got

14   a lab that I've used before, and I am sure we could enter

10:40:21  15   into a stipulated --

16          THE COURT:  Well, you could talk to the lab if the

17   government doesn't object and then maybe your expert can

18   talk to the lab if need be.

19          So we will set it, and if it becomes -- if you

10:40:36  20   can't get it done within the 14 weeks, let us know, and then

21   also let us know if we're going to need to take evidence, if

22   we're going to have to hear from the expert so we have

23   adequate time.

24          What date do we have in mind, Ms. Kestner?

10:40:49  25          COURTROOM DEPUTY CLERK:  February 13 at 11:00 a.m.

Lori A. Callahan, RMR-CRR          (330) 252-6022

1        THE COURT:  February 13 at 11:00.  What day of the

2   week is that?

3        COURTROOM DEPUTY CLERK:  It's a Wednesday.

4        THE COURT:  Does that work for both sides?

10:41:03  5        MR. DALY:  Yes, Your Honor.

6        MR. WHITNEY:  Fine, sir.

7        THE COURT:  All right.  We will use that date.  If

8   you need additional time, let us know.  If you are able to

9   resolve that issue regarding the dispute, you can let us

10:41:16 10   know or let the probation officer know one way or the other.

11        Otherwise, we will be prepared on that date and

12   time to hear whatever evidence you would like to present and

13   resolve the issue.

14        Anything else?

10:41:25 15        MR. DALY:  No, Your Honor.

16        MR. WHITNEY:  No, Your Honor.  Thank you.

17        THE COURT:  All right.  Thank you very much.  Have

18   a good weekend.

19

20

21

22

23

24

25

Lori A. Callahan, RMR-CRR        (330) 252-6022

1                         C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.

6

7

8                    s/Lori A. Callahan
                     Lori Ann Callahan, RMR-CRR
9                    U.S. District Court, Suite 568
                     2 South Main Street
10                   Akron, Ohio  44308
                     (330) 252-6022
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25