UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 5:18 CR 0406 |
| | ) | Civil Docket No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| WILLIE R. BENTON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. §2255**

Now comes Defendant Willie R. Benton, Jr., by and through counsel, and respectfully submits this Petition for relief pursuant to 28 USC 2255 provisions. Section 2255 provides the primary means of a collateral attack on a federal sentence.

Under 28 U.S.C. § 2255, a prisoner may collaterally attack his sentence on four grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see also *Hill v. United States*,

1

368 U.S. 424, 426–27, 82 S.Ct. 468, (1962). To obtain relief under § 2255 on the grounds of ineffective assistance of counsel, a Defendant must establish (1) that his lawyer's performance was deficient as compared to an objective standard of reasonable performance and (2) that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. See *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome"; it is a less demanding standard than "more likely than not." Id. at 693–94, 104 S.Ct. 2052.

## PROCEEDURAL HISTORY

Defendant Benton was arrested after purchasing approximately four kilos of powder cocaine during a transaction at his home. He entered a plea of guilty to count one of the Indictment charging him with Conspiracy to Distribute and Possess with the Intent to Distribute Cocaine in violation of 21 USC 841(a)(1), (b)(1)(B) and 846. This change of plea from not guilty to guilty on Count one occurred on November 2, 2018. The PSR was completed, and sentencing occurred on February 13, 2019. Defendant was sentenced to 260 months incarceration followed by ten years of supervised release.

Defendant through counsel filed an appeal addressing that the District Court erred in calculating the Federal Sentencing guidelines for relevant conduct by adding three additional kilograms of "crack" cocaine found in a safe in his home. The appeal was affirmed on May 1st, 2020. This habeas is therefore timely filed on or before May 1st, 2021.

## STATEMENT OF FACTS

On the date of the transaction for the purchase of four kilograms of cocaine at Defendant's residence from a person named Merida, the DEA arrested both Defendant and Merida due to the DEA surveilling the transaction. Merida was stopped when leaving the premises and arrested while the agents with a warrant searched the Defendants residence. In Merida's care was $94,190 in cash while the agents at Defendant's residence found the four kilograms of powder cocaine. Alleged to have been found in a safe in the residence were three kilograms of what was first described as "probably the worst cocaine I have ever seen in my 20 years…" (Agent Gilbride's statement at sentencing. Doc#75 p.28). Later in testimony of the lab analysis agent the safe drugs were said to contain cocaine base. (Analyst Taggert, Doc#75 p.17) There was no quantitative analysis done on the safe drugs other than the weight of the whole, not the drugs themselves. Agent Taggert stated that he found the safe drugs "to contain cocaine base, crack cocaine" (Doc#75 p.14). He did not identify any quantity. (Doc#75 p. 17).

The PSR calculated Defendant's guideline range at 33. This was based on the drug quantity of the purchase of four kilos of cocaine and what was found in the safe, alleged to be crack cocaine or base cocaine. The safe drugs were described as relevant conduct though not charged in the indictment. The drugs in the safe were not tested by defense counsel though Counsel told the court he would test the drugs in the safe at the plea hearing to determine if in fact the drugs were crack cocaine in lieu of powder. This test could also have shown a quantity of that drug as compared to the cut.

If the drugs in the safe were heavily adulterated, it might not have been anything more than cut and therefore the detectible amount of anything should have been the basis of any weight analysis. There was no clarity to this issue as counsel for the defense failed to have tested.

The Indictment never mentions crack cocaine. Crack cocaine is usually found in cookie form as the cocaine paste (cocaine base) is hardened for breakup and distribution when combined with baking soda or other similar substances for binding and/or cut. At the very least a variance would apply considering the term "detectible amount" which would indicate that the weight over represents the value of the drug as cocaine base. The structure of the safe drugs also matters.

On appeal counsel argued that the drugs found in the safe should not be counted as relevant conduct. That is not the issue here. Here counsel was ineffective for failing to have the drugs independently tested as he told the court he intended to do. Further counsel was ineffective in failing to argue that even if the drugs in the safe could be counted, which Defendant does not concede here, the amount of the drugs percentage wise should have been that amount to any other just weight relevant conduct. Counsel never had the drugs tested independently to determine if they were crack, cocaine base or powder cocaine and what percentage made up the drug carrier. This is significant in taking the plea as Count one of the Indictment never even mentions crack cocaine or base. (Cocaine base and crack have been used as interchangeable terms but have different meanings).

This confusion was compounded when the Ohio Bureau of Criminal Identification witness Keith Taggert testified that the substance in the safe was a detectible amount of cocaine base whereas the Agent, Michael Gilbride kept referring to the safe drugs as cocaine of poor quality (Doc# 75 p. 28, 58). This problem was exacerbated where counsel failed to have the drugs tested independently to resolve the conflicting testimony of Taggert and Gilbride or at the very least to determine quantity of either substance or useability for the purpose it was intended. The prejudice to these events is that Defendant received a higher guideline range than applicable. Assuming for argument purposes the safe drugs can be counted and were powder cocaine the actual guidelines would start at level 30. With two points added for the gun and three for acceptance deducted the final range would have been 29. The guidelines for this level would have been 151 to 188 at criminal history level VI. (Doc#: 82 p.66 guideline discussion on either level 33 or 29 and findings that criminal history level was VI). Alternatively, quantitative analysis would be equally important for variance considerations.

## ARGUMENT

I. <u>Counsel was ineffective for failing to have the drugs found in the safe teste independently as to both substance and quantitative analysis.</u>

Here the plea was entered on the premise that defense counsel would have the drugs from the safe tested independently (Doc#:82 p.25). The Indictment did not charge crack cocaine. (Doc#:9). At the plea hearing even the court noted that Defendant reserved the argument related to how much "cocaine" would be used to calculate the guidelines

(Doc# 82 p.16). Defendant entered his plea with the promise and understanding that his attorney would independently test the drugs from the safe.

Counsel during the plea hearing stated to this Honorable Court that he would get the alleged drugs tested from the safe to support the position taken by the Defendant that those drugs not only should not be counted but at very least the substance found therein was not crack cocaine. Counsel failed to resolve this matter with proper testing on two levels of concern; one that the substance was not crack and two if it was crack or cocaine base that the amount of the cocaine base or crack being detectible should be the amount charged not the total weight with the cut because everyone acknowledged at some point that whatever was it the safe drugs was "probably the worst cocaine I have seen in 20 years" as Agent Gilbride testified to . (Doc#75 p.28). (The lab analysis resulted in a highly adulterated cocaine base substance). At least this would have supported a variance to the sentence imposed as to whatever amount of drug was in the highly adulterated drugs from the safe.

The difference in the sentencing range is significant. This matter was never resolved effectively on either option noted above, actual drug or variance to weight and there was not quantitative analysis done. (Doc#75 p. 17) Further, what is a detectible amount, a question never asked or answered. There is no physical description. The agent called it worst cocaine he has ever seen. (Doc#:75 p.14). Later Taggert testifies that all the substances tested indicated cocaine base. (Doc#:75 p. 16). He also testified that he did not determine how much cocaine base was in the substance. (Doc#:75 p.17). This is significant as to what relevant conduct should apply or if a variance on the issue was

6

reasonable. Not knowing how much of any substance was in the safe suggests the amount was barely, if at all, detectable and whether such can be weighed solely on the weight of whatever the majority of the substance found indicates.

At the sentencing hearing, Agent Gilbride testified that the substance looked like pancake mix. He also said plainly that the Defendant had difficulty selling the substance from the safe because "the quality of the "cocaine" was so poor" (Doc#:75 p.21). In support of the fact that the substance from the safe was not crack he testified that a lady in Cleveland complained about the cocaine she received from Defendant and that it "would not cook into crack". (Doc#:75 p.22). He repeats that the quality is the "worst cocaine", he has seen in his 20 years as an agent. (Doc#:75 p.28). The agent further verified it was junk "cocaine" and that they intercepted phone calls complaining about it as noted in the Cleveland conversation that the substance was not able to be cooked into crack. (Doc#:75, p.29-30 with p. 22). If the substance in the safe was already crack this corroboration call would not be accurate. The agent also described the substance as "off-white powder" in the safe. (Doc#:75 p.47). Cocaine base or crack takes a significantly different form than powder cocaine not related to color. Even Defense counsel stated the Defendant was a distributor of cocaine and the government did not object to this description. (Doc#:75 p.51-54).

Counsel never indicated he followed through on getting an independent test as he agreed to at the plea hearing or that the actual evidence was shown to the court. The objections made and the appeal issue did not address the ineffective assistance of counsel claim here. Counsel failed to follow up on his commitment to Defendant at the plea

hearing. He did argue at sentencing that the safe substance should not be considered relevant conduct and addressed the substance in cross examination of the Governments expert and the agent but even here no one addressed the substance with clarity, a defense expert finding or the actual evidence. This matter is extremely significant since Defendant was never a crack dealer and there is evidence that what he was selling could not be made into crack which in and of itself supports the fact that the bad substance in the safe was a powder substance and not crack or at the very least was so highly adulterated as to not be relevant conduct or was subject to this Honorable Courts consideration that whatever was detectible, if at all, was a the weight value to apply to the guidelines as relevant conduct.

Cocaine base and powder cocaine are pharmacologically indistinguishable from each other. *U.S. v. Brisbane,* 367 F.3d 910, 911 (D.C. Cir. 2004), *cert. denied*, 543 U.S. 938 (2004); *U.S. v. Gunter,* 462 F.3d 237, 240 (3d Cir. 2006). Cocaine "is usually processed for importation into the United States by dissolving the cocaine base in hydrochloric acid and water to create a salt: cocaine hydrochloride, C17H22C1NO4 (powder cocaine). Powder cocaine may then be converted back to its base form by cooking it with baking soda and water… In numerous trials before this Court, the Government's forensic chemists have testified that powder and crack cocaine are the same chemical substance, just in a different form." *U.S. v. Hamilton*, 428 F. Supp. 2d 1253, 1257 (M.D. Fl. 2006). The generally more conservative Fourth Circuit treats cocaine base and crack interchangeably. *U.S. v. Ramos*, 462 F.3d 329, 434 n2 (4th Cir. 2006). What the District of Columbia Circuit, however, has ruled is that a conviction for

cocaine base — rather than for powder cocaine — requires proof that the cocaine base is smokable. *Brisbane*, 367 F.3d at 914. None of these safeguards were examined.

These cases stand for the premise that cocaine base and powder are different in terms of use and result in different applications something no one on the day of sentencing clarified with specificity. Nor did counsel test the substance or show it to the court as promised during the plea colloquy or that the substance if crack was smokable or even detectable enough to be useable. If all of this had been clarified more specifically the court could have considered a variance as well as a different guideline range where the results showed no crack or base significant enough to be useable.

II. <u>Defendant received ineffective assistance of counsel in counsel's failure to call or consult with an expert on the drug type and purity. This ineffective assistance was relevant to the offense level and at least a variance argument on purity and type of drug.</u>

At the plea hearing defense counsel told the court and the Defendant that he was going to get the drugs from the safe tested. (Doc#: 82 p.25-26). This never happened. It was an important step to determine either the substance was bad cocaine or crack or if the substance contained some crack how much it was and could that be an issue for discussion to ask the court for a variance in the sentence due to the fact that "traceable" does not mean kilos. Clearly the court could consider the detectible amount as less than three kilos of crack. The description of the substance as powder oriented, not a solid substance of which crack or base is considered to be, was frequently interchanged during sentencing.

9

Crack cocaine is a drug created through a complicated process involving baking soda, which results in crystalline "rocks". These are smoked, unlike powdered cocaine, which is typically snorted. *(www.americanaddictioncneter.org)*. Counsel failed to cross examine the expert Taggert on how a detectible amount of crack was identified and if it made up the full weight in appearance as crack cocaine and was useable as in smokeable. Did the cut have backing soda in it and was it crystalline, cookie format or powder? These distinctions at the sentencing hearing were not established and Defendant was prejudiced in the sentence he received. There is both lack of clarity on the substance found in the safe and a lack of request for a variance based on this confusion and inaccurate determinations and promises unfulfilled. This is a violation of Defendants due process rights and affective assistance of counsel. Thus, counsel's failure to independently test the safe substance was ineffective and prejudiced the defendant. There could have been a quantitative argument along with other clarifications on how the substance was presented or if it was useable at all. The court should allow the substance to be independently tested by the Defendant for these proceedings.

III.   <u>Counsel was ineffective in failing to argue that the Indictment was defective by determining what substance was in the safe and if it was crack cocaine that should have been charged independently.</u>

Indictments require specificity as to what charges are being filed against a defendant so they can adequately address any defenses or other significant issues related to the actual charges. In this case the indictment specifically stated, in all counts, that the offenses charged against Defendant were for cocaine. For a plea of guilty the Government would dismiss count two which was for possession with intent to distribute a

mixture or substance that contained a detectible amount of cocaine, not crack or cocaine base. Therefore, there was no notice of any other substance being charged other than cocaine. All the drugs found were before the indictment was issued so the government had the time to test the seized substances and note that in the Indictment or superseded the indictment. Without notice of this difference in the charges Defendant could not mount a defense or ask for a bifurcation of any charges of crack cocaine for trial purposes or enter a knowing plea with that issue unresolved.

In *United States v. DuBo*, 186 F.3d 1177 (9th Cir. 1999), and *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Supreme Court, and the Ninth Circuit, determined that the Indictment must plead to specific statutory language in each of the charges filed against the defendant. As such, there is specific language in each statute that must be identified to put a defendant on proper notice of what constitutes the charge of the grand jury.

In *United States v. Glick*, 142 F.3d 520 (6th Cir. 1998), a defendant may challenge the courts failure to charge the defendant with a crime. Elements lacking in the indictment are jurisdictional defects, which may be raised on appeal despite the failure to preserve the issue for appeal by objection. In *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1998), the defendant was permitted to challenge an indictment on the grounds that it failed to establish jurisdiction or state an offense. In *United States v. Spinner,* 180 F.3d 514, 516 (3rd Cir. 1999), when an indictment fails to sufficiently state an offense, it is a fundamental defect, and such can be raised at any time. It is not

specifically defined as only an appellate issue, or an issue being raised for the first time on appeal, whether objected to or not.

The Fourth Circuit has a good decision that summarizes and addresses the defective indictment issue. (See, *United States v. Cotton*, 261 F.3d 397 (4th Cir. 2001) Petition for Cert. granted, see *United States v. Cotton* 122 S.Ct. 1781 (2002)). In *Cotton* the Fourth Circuit Court of appeals, where the case originated, made clear the purpose of specificity in an Indictment. The Fourth Circuit noted that "the district court exceeded its jurisdiction in sentencing the defendants for a crime with which they were never charged, thus depriving them of the constitutional right to 'answer' only for those crimes presented to the grand jury." *Cotton*, *14. More specifically, the Fourth Circuit stated:

> Thus, because an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional, and a defendant cannot be held to answer for any offense not charged in an indictment returned by a grand jury, a court is without jurisdiction to impose a sentence for an offense not charged in the indictment. To hold otherwise would be to allow the court to impermissibly broaden the indictment on its own accord during the sentencing phase. To be sure, the district court action in this case did not technically result in a constructive amendment of the indictment...[b]ut there is no question that the effect of what it did was the same, because the court sentenced the appellants for a crime with which they were never charged...In so doing, the district court encroached upon the prerogative of the grand jury, because only the grand jury has the power to broaden the charges after an indictment has been returned.

*Cotton*, 261 F.3d 397 (4th Cir. 2001) (internal quotes and citations omitted).

This issue is further complicated by the fact that Defendant was sentenced on the premise that the drugs from the safe were in some way crack cocaine something not charged in the case at all and was left to an unclear determination for all statutory sentencing purposes.

12

IV. <u>Counsel was ineffective in not obtaining the promised defense expert to test the drugs from the safe and substance purity to argue variance.</u>

With all the confusion over what the substance from the safe was, more should have been done to resolve the matter. It is unreasonable not to investigate the substance from the safe with more testing and clarity. This is important to relevant conduct issues not so much for quantity but substance and quantitative value within the substance as well as variance factors a court is allowed to consider. Clearly a detectible amount of crack, if there was any, would require a different physical description than what was evidenced at the sentencing hearing. The expert did not describe the physical appearance and the agent kept calling the drugs from the safe "cocaine", bad cocaine but none the less cocaine.

Even assuming for argument purposes, a detectable amount of crack was identified though that is still uncertain, that does not require a sentence where the whole carrier medium substance containing some, barely if at all, a detectible amount of drugs should be used for sentencing purposes as it was a substance not even useable.

The agent testified that it was not consistent with a typical kilogram of cocaine but also said it looked like "Bisquick pancake mix" (Doc#:75 p. 21) and the "worst cocaine" he has ever seen. Was it solid or was it in powder form? Was there baking soda in the mix? Could it be smoked? What made the detectible amount of cocaine base evident if the form was not consistent with crack or base cocaine? All of this is significant and the proof of what the substance was does not pass scrutiny as crack cocaine or that the whole of the substance can even be considered crack cocaine or base, one and the same. This

13

issue is significant to a court's determination if a variance below the guidelines would be reasonable to consider. *Gall v. United States*, 128 S.Ct. 586 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005).

The characteristics of the safe drugs warranted further analysis to determine if a variance was warranted. An unreasonable amount of weight was given to the drugs in the safe in light of their minimal value or use capabilities as noted in the corroboration discussion with the agent and a person who had previously purchased cocaine from the Defendant. These factors were not considered at sentencing just the total weight of the carrier cut. It is the opportunity to argue these factors for a variance that was deprived without more clarity of the drug substance and quantity as applied to actual weight of the drugs in the carrier cut. What was the actual weight and substance itself without the cut, and since the substance was unusable would that be a factor for the court to consider for variance purposes?

If the court did not know what the actual drug was and what was waste or if the whole thing could be determined to be nothing usable (if crack smokable), the court could not determine if a variance might have been warranted. Therefore, the testing must be done more thoroughly, and the court should have the opportunity to evaluate all this information in determining if a variance below the guidelines on drug quantity would be reasonable. "[w]here a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Recla*, 560 F.3d 539, 547 (6th Cir.2009) (citing *United States v. Richardson,* 437 F.3d 550, 554 (6th

14

Cir.2006)). A district judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. This could not have occurred without a full representation of testing. Counsel's failure to get the drugs tested for purity, substance and other issues of relevance resulted in error and prejudice in giving the court the opportunity to evaluate variance considerations.

It is respectfully requested that this Honorable Court allow a defense expert lab to evaluate the drugs found in the safe first before hearing the merits of this motion.

Respectfully Submitted,

/s/Marcia Shein
Marcia Shein (GA 639820)
Federal Bar No. 53667
Law Firm of Shein & Brandenburg
2392 North Decatur Road
Decatur, GA 30033
(404) 633-3797
(404) 633-7980 (fax)
Marcia@msheinlaw.com

Lead Counsel for Defendant Benton

/s/ Mark S. Bennett
Mark S. Bennett (0059823)
Bennett Legal, LLC
1991 Crocker Road, Suite 600
Westlake, Ohio 44145
(216) 849-8230
mark@bennettlegalfirm.com

Local Counsel for Defendant Benton

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2021 a copy of the forgoing Response was electronically filed with the Clerk of Court via the CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

    Respectfully Submitted,

    /s/ Mark S. Bennett
    Mark S. Bennett (0069823)
    Marcia Shein (GA 639820)

    Counsel for Defendant Benton