IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO.: 5:18-cr-00406 |
| ) | 5:21-cv-00677 |
| Plaintiff-Respondent, ) | |
| ) | |
| V. ) | JUDGE JOHN R. ADAMS |
| ) | |
| WILLIE R. BENTON, JR., ) | GOVERNMENT'S RESPONSE IN |
| ) | OPPOSITION TO PETITIONER'S |
| Defendant-Petitioner. ) | MOTION TO VACATE, SET ASIDE, OR |
| | CORRECT SENTENCE |

The Plaintiff-Respondent, United States of America, by and through its counsel, Michelle M. Baeppler, Acting United States Attorney, and Aaron P. Howell, Assistant United States Attorney, hereby responds to Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to Title 28, United States Code, Section 2255. For the reasons set forth below, Petitioner's Motion should be denied without a hearing.

**Standard of Review**

28 U.S.C. § 2255 provides a prisoner in federal custody a remedy to collaterally attack his sentence on the ground that it was imposed in violation of the Constitution or the laws of the United States. A prisoner may move to vacate, set aside, or correct his sentence upon the basis "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. To warrant relief under the statute because of constitutional error, the error most be one of constitutional magnitude which had a substantial and injurious effect or influence on the

proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005).

**<u>Analysis</u>**

Defendant, through counsel, sets forth one claim for relief: ineffective assistance of counsel. A petitioner alleging ineffective assistance of counsel must show that counsel's performance was inadequate and that prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel is presumed to have provided effective assistance, and a petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir.2003). A defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.

An error by counsel, "even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Deficiencies in counsel's performance must instead "be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id*. at 692. It is not enough for the defendant to show "that the errors had some conceivable effect on the outcome of the proceeding" as virtually "every act or omission of counsel would meet this test." *Id*. at 693. The "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. If the evidence of a petitioner's guilt is overwhelming, he cannot possibly establish prejudice, even if counsel's performance was deficient. *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001).

Defendant argues that his counsel was ineffective for failing to have the crack cocaine tested by another expert regarding the type of substance and quantitative analysis. (R. 1-1, 2255,

2

PageID 19. Defendant claims that his plea was entered on the premise that the crack cocaine would be tested by another expert prior to sentencing. (*Id*.). The record in the case shows that Defendant's counsel did not commit to seeking additional testing. The Defendant's claims also lack any merit because the purity of the substance is irrelevant to the guideline computations.

At a pretrial on October 25, 2018, Defendant's counsel informed the Court that he was looking into the crack cocaine issue, "I have not talked to the chemist from – BCI did this. I have not talked to the chemist about that. So, what we may be doing is testing it for ourselves in between the plea and the sentence in this case so that we could determine if there is another opinion as to whether or not it's – as you can see, it does make a substantial difference in the case in terms of what it would be". (R. 73: PT-10/25/18, PageID 602). At the change of plea hearing, Defendant's counsel indicated that he may not seek additional testing because the Government gave him permission to speak to the BCI chemist. "I've got a lab that I've used before, and I think the government – if we do the testing, the government has given me permission to talk to the analyst from the BCI and I may go up there and that may resolve some of the issues here, but if that's the case, then we wouldn't have to get it tested." (R. 82: COP 11/02/18, PageID 759).

At sentencing, the BCI forensic chemist Keith Taggart testified that prior to the sentencing hearing he spoke with Defendant's counsel regarding his analysis for the case. (R.75: Sentencing 05/07/19, PageID 625). The record reflects Defendant's counsel did exactly what he told the Court he was going to do. Defendant's counsel talked with the BCI forensic chemist and then decided he wouldn't get the substance tested by another expert. Instead, Defendant's counsel chose to cross-examine the BCI forensic chemist and the investigating agent regarding the nature of the substance and other related matters at Defendant's sentencing hearing.

Defendant argues that counsel should've asked other questions like: "what is a detectable amount", (apparently referring to the lack of purity testing done on the three packages of crack-cocaine). (R. 1-1, 2255, PageID 20). Defendant's counsel did ask BCI forensic chemist Taggart questions about the lack of purity testing at the sentencing hearing,

> **Attorney Whitney**: "And it does not do an analysis as to how much cocaine base was in the substance?"
>
> **Taggart**: "That's correct".
>
> **Attorney Whitney**: "The tests that you have available to you at the Bureau of Criminal Identification do not perform that kind of testing?"
>
> **Taggart**: "We just do qualitative analysis to determine whether something is or is not there. Not quantitative analysis." (R. 75, Sentencing 05/07/19, PageID 628).

Defendant argues that purity testing would have been significant as to what relevant conduct should apply or if a variance on the issue was reasonable. "Even assuming for argument purposes, a detectable amount of crack was identified though that is still uncertain, that does not require a sentence where the whole carrier medium substance containing some, barely if at all, a detectable amount of drugs should be sued for sentencing purposes as it was a substance not even useable. (R. 1-1, 2255, PageID 27). Basically, Defendant argues that the three packages in the safe were mostly cocaine and just a small amount of cocaine base. If the three packages in the safe contained a mixture of cocaine and cocaine base, the guideline calculations would be the same, and would be driven by the cocaine base calculation. "Unless otherwise specified, the weight of the controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance. If a mixture or substance contains more than one controlled substance, the weight of the entire mixture or

4

substance is assigned to the controlled substance that results in the greater offense level". U.S.S.G. §2D1.1, (Notes to Drug Quantity Table, (A)). Therefore, Defendant's counsel's decision not to have the three packages from the safe tested for purity was a reasonable decision and did not prejudice the Defendant, because purity results would not have affected the guideline computation of the mixture and substance in the three packages. Defendant's counsel also pointed out the lack of purity testing during the sentencing hearing, so the Court could consider a possible variance from the sentencing guideline computation.

The Defendant's statements at the sentencing hearing indicate that he possessed the mixture and substance in the three packages in the safe with the intent to distribute it. He was allegedly not very successful in selling it because it was already in the cocaine base form. At the sentencing hearing the Defendant stated, "And besides that, that yes, I did intend to distribute the four kilos, but the three was never at all intended to be sold. They were given to me years before this even happened, before the DEA got ahold of me, and they've been sitting there. And the reason they were sitting there is because the person was supposed to fix the stuff. And it had nothing to do with Merida at all. So the four kilos that I did distribute with intent, that prior whole year of 2018, yes, that's the crime that I committed. But to distribute seven kilos or ever to have sold crack cocaine, never in my life. I had never did that. And the agent should know, if he's been wiretapping me, and know that I have not one time talked about an inch of selling no crack cocaine. That drugs was given to me by a supplier. How it came is how I got it. And I haven't touched it ever since because it was unsellable. And that's just all I have to say". (R.75, Sentencing, 05/07/19, PageID 75-76).

So, Defendant's statements are consistent with the lab results from BCI Forensic Chemist Taggart, because the packages did not contain cocaine (Benton's admitted drug of choice when

5

trafficking), they contained cocaine base (which Benton called unsellable). Benton also admitted that the packages were sitting in his safe next to a firearm because the person was supposed to "fix the stuff".

Defendant also claims counsel was ineffective for failing to argue that the Indictment was defective because Defendant was not charged with possessing cocaine base with the intent to distribute. (R. 1-1, 2255, PageId 24). Defendant claims that there was no notice that any other substances were being charged other than cocaine. Defendant was put on notice that the mixture and substance recovered from the safe contained cocaine base. The United States provided the lab results in discovery. The Court found that the three packages from the safe containing cocaine base were relevant conduct. A defendant's uncharged trafficking offense for one controlled substance can constitute relevant conduct when the defendant is sentenced for trafficking in another. *United States v. Gill*, 348 F.3d 147, 151 ("[T]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See [U.S.S.G.] § 1B1.3(a)(2) (Relevant Conduct)." (quoting U.S.S.G. § 2D1.1, application note 12 (application note 5 to the same section in the current Guidelines))).

Defendant claims that he couldn't enter a knowing plea because he did not know about the cocaine base allegation. (R. 1-1, 2255, PageID 25). That claim is simply not true. The Defendant had the lab results. The Defendant entered into a plea agreement that provided notice that the Government would argue that the 3 packages in the safe contained cocaine base and were relevant conduct. (R. 36 plea agreement, PageID 126). In the plea agreement, the Defendant reserved the right to argue that he possessed with intent to distribute 6,879 grams of Cocaine. (*Id*.). Defendant's counsel referenced those specific provisions of the plea agreement at the change of plea hearing. (R. 82, COP, PageID 756-57. The factual basis and relevant

6

conduct portion of the plea agreement also included the following sentences, "Agents also recovered the 3,956 grams of cocaine and recovered 3 bricks containing a yellow substance. The Agents submitted the yellow substance to the Ohio Bureau of Criminal Investigation Laboratory for scientific analysis. Forensic Scientist Keith Taggart determined that the 2,923 grams of the yellow substance contained Cocaine Base." (R. 36, Plea agreement, PageID 128). Defendant initialed every page of the plea agreement and signed it. (Id., PageID121-32). Defendant acknowledged that he read the factual basis and relevant conduct portions of the plea agreement and admitted that he engaged in the conduct described therein. (R. 82, COP, PageID 755).

## An Evidentiary Hearing is Not Necessary in This Case

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that [a] … hearing is warranted. An evidentiary hearing is not necessary when a § 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (internal citations omitted); *accord Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

The record in this case shows that Defendant's counsel's performance was not ineffective and the Defendant suffered no prejudice by any decisions Defendant's counsel made. Purity testing analysis would not change the sentencing guideline computations in this case, therefore the Defendant's Motion to Test Substance (R. 104, PageID 864-65) should be denied as well.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny Defendant Benton's petition under 28 U.S.C. § 2255 without an evidentiary hearing, as the files and records of this Court establish that he is not entitled to any relief. *See Valentine v. United*

*States*, 488 F.3d 325, 333 (6th Cir. 2007) (no evidentiary hearing required where "record conclusively shows that the petitioner is entitled to no relief") (*quoting Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003) *(quoting Green v. United States*, 65 F.3d 546 (6th Cir. 1995)). Additionally, the government respectfully requests that this Court deny Defendant's Motion to Test Substance.

                                                Respectfully submitted,

                                                MICHELLE M. BAEPPLER
                                                Acting United States Attorney

By:   /s/ Aaron P. Howell
        Aaron P. Howell (OH: 0081347)
        Assistant United States Attorney
        Federal Building
        2 South Main Street, Room 208
        Akron, OH 44308
        (330) 761-0526
        (330) 375-5492 (facsimile)
        Aaron.Howell@usdoj.gov