UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **WILLIE R. BENTON, JR.,** ) | CASE NO. 5:21-CV-00677 |
| ) | 5:18-CR-00406 |
| **Petitioner,** ) | |
| ) | JUDGE JOHN R. ADAMS |
| v. ) | |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |

This matter comes before the Court upon Petitioner Willie Benton, Jr.'s petition pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. Doc. 1, Doc. 73. For the reasons set forth below, Benton's Motion to Vacate, Set Aside, or Correct Sentence is DENIED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Benton was arrested after purchasing four kilograms of powder cocaine in a drug transaction in his home. Doc. 86, p. 1. While executing a search warrant, agents found the four kilograms of powder cocaine, and relevant here, approximately three kilograms of crack cocaine in a safe. Doc. 86, p. 2. On July 24, 2018, Benton was indicted on the following counts: 1) Conspiracy to Distribute and Possess with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846; 2) and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Doc. 9.

On November 2, 2018, pursuant to a plea agreement, Benton pled guilty to Count One of the indictment and Count Two was dismissed. Doc. 36. The underlying drug quantity calculation

was at issue at the February 13, 2019, sentencing hearing. Doc. 86, p. 2. Notably, Benton pled guilty regarding the four kilograms of cocaine, which did not include the 3 kilograms of the crack cocaine found in the safe. However, the presentence report took this approximately three kilograms of crack cocaine into account as relevant conduct for sentencing purposes. After considering witness testimony presented at the sentencing hearing, the Court sentenced Benton to 260 months of imprisonment, followed by ten years of supervised release. Doc. 58, 62. Benton appealed the judgment to the Sixth Circuit Court of Appeals, but the judgment was affirmed. Doc. 86, 87.

Benton now makes this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

**II. LAW AND ANALYSIS**

Under 28 U.S.C. § 2255, "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To prevail on a §2255 motion, the petitioner must allege that: 1) his conviction resulted from an error of constitutional magnitude; 2) his sentence was imposed outside the statutory limits; or 3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). The petitioner must sustain the allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964.

In his four grounds for relief, Benton argues that his Sixth Amendment rights were violated due to ineffective assistance of counsel. The standard for ineffective assistance of counsel is a two-part test set forth by the U.S. Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). First, Benton must show that his counsel's performance was deficient. *Id.* at 687. Counsel must not merely have erred but erred so "serious[ly] that counsel was not functioning as the 'counsel' guaranteed…by the Sixth Amendment." *Id.* Second, Benton must show a reasonable probability that but for the error, the results of his proceedings would have been different. *Id.* When a defendant makes an insufficient showing on one component of the two-part inquiry, reviewing courts are not required to "address both components of the inquiry." *Id.* at 697.

In Grounds One, Two and Four, Benton contends that his counsel erred by not independently testing the drugs found in the safe or consulting with an expert to determine the type, purity and amount. Doc. 102-1, p. 5, 9. Specifically, Benton contends that he entered his guilty plea on the "promise and understanding that his attorney would independently test the drugs from the safe." Doc. 102-1, p. 5. He asserts further testing was necessary to determine if in fact the substance in the safe was crack or what percentage of the substance was crack. Benton argues that if his Counsel had conducted these tests, the total amount of drugs considered by the Court for sentencing purposes would have been significantly lower.

There is no indication that Benton's plea was contingent on a "promise" to independently test the drugs from the safe. As the Government points out, the parties discussed at the pretrial the implications the type of drug (crack or cocaine) would have on sentencing. Doc. 73, p. 4-6. Benton's counsel stated that he had yet to talk to the BCI chemist who tested the drugs, and therefore "what we may be doing is testing it ourselves in between the plea and the sentence in this case so that we could determine if there is another opinion as to" the substance. Doc. 73, p. 6-

3

7. The matter was again discussed at the change of plea hearing and Benton's counsel confirmed that Benton understood that the drugs in the safe could be used at sentencing as relevant conduct. Doc. 82, p. 24. Benton's counsel indicated that he would "probably be requesting that the drug that was found in the safe be analyzed by a private chemist[.]" Id. Counsel further explained that the government gave him permission to speak to the BCI analyst "and that may resolve some of the issues here, but if that's the case, then we wouldn't have to get it tested." Doc. 82, p. 26. This is far from a promise to independently test.

Benton's counsel did in fact speak to the BCI analyst and evidentially made the decision that further testing was not necessary, just as he stated he would. Doc. 75, p. 14. At sentencing, BCI forensic chemist Keith Taggart testified that the drugs found in the safe contained cocaine base (crack). Doc. 75, p. 14. On cross-examination, Taggart confirmed that the tests he ran would not indicate whether there were substances other than cocaine base in the sample and that he did not determine how much cocaine base was in the substance. Doc. 75, p. 17. In other words, Taggart explained, BCI only conducts a qualitative analysis, not a quantitative analysis. Id.

Benton asserts that by failing to obtain that quantitative analysis, his counsel was ineffective. However, Benton cannot establish that but for the alleged failure to test the drugs from the safe, the results of his proceedings would have been different. The Court agrees with the Government's contention that "the purity of the substance is irrelevant to the guideline computations." Doc. 105, p. 3. According to the applicable guideline, if a substance contains a mixture of two controlled substances, "the weight of the entire mixture or substance is assigned to the controlled substance that results in the greater offense level." U.S.S.G. §2D1.1, (Notes to Drug Quantity Table, (A)). The Court heard evidence and concluded that the drugs in the safe contained cocaine base. Doc. 75, p. 80. Benton's counsel also pointed out the lack of purity testing during

the sentencing hearing, so the Court could consider a possible variance from the sentencing guideline computation. Accordingly, Benton cannot establish that his sentence would have been different but for his counsel's decision not to test the purity of the substances.

In Ground Three, Benton contends that his counsel erred by "failing to argue that the Indictment was defective by determining what substance was in the safe and if it was crack cocaine that should have been charged independently." Doc. 102, p. 10. He contends that he had "no notice of any other substance being charged other than cocaine," and therefore he could not mount a defense, ask for bifurcation or enter a knowing plea. Doc. 102, p. 11. This contention is without merit and is belied by his own arguments here that he allegedly pled guilty based upon his counsel's "promise" to test the substance. Thus, Benton was clearly on notice that the test results revealed that the substance found in the safe was crack. Further, as evidenced by his plea agreement, Benton clearly was on notice that the Government considered the substance found in the safe relevant conduct under §1B1.3. R. 36, p. 126. Benton cannot establish that he was unaware of this information.

Because Benton's claims that his Sixth Amendment rights were violated are without merit as explained above, it cannot be said that his conviction resulted from an error of constitutional magnitude pursuant to 28 U.S.C. §2255. Finally, Benton requests an evidentiary hearing. Benton is entitled to an evidentiary hearing under §2255 only if the Court determines such a hearing is necessary. The Sixth Circuit has routinely held that "a hearing is unnecessary where, as here, the motion, files and records conclusively show that the prisoner is not entitled to relief." *Bryan v. United States*, 721 F.2d 572, 577. (6th Cir. 1983). Upon review, Benton has not met his burden to establish that a hearing is necessary. *See Id.*

## IV. CONCLUSION

For the reasons stated above, Benton's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is DENIED.

Date: 7/6/22　　　　　　　　　　　　/s/ John R. Adams
　　　　　　　　　　　　　　　　　　**JUDGE JOHN R. ADAMS**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**